[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
The Estate of Linda D. Aubin, acting through Administrator John Hoyle, Jr., seeks reversal of the Town of Lincoln Zoning Board of Review's April 4, 2003 decision, granting Timothy Petit's application for a dimensional variance. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
John Hoyle, Jr. (Hoyle) is the administrator of the Estate of Linda Aubin. The Estate owns real estate located at 1052 Great Road in Lincoln, Rhode Island. Timothy Petit (Petit) is presently building a home on his real estate located at 1050 Great Road. Whereas certain records in the office of the town building inspector reflects that Petit's lot is zoned RS-12, the zoning map reflects that Petit's property is zoned RS-20. RS-12 zoning requires a 25 foot front yard setback. RS-20 zoning requires a 30 foot front yard setback. Town of Lincoln Zoning Ordinance Article III, Section B.
Believing that he was in a RS-12 zoning district and had a 25 foot setback, Petit enlarged the size of his garage and poured its foundation. Determining that Petit's lot was actually zoned RS-20, the building official issued a stop work order. Construction ceased.
Petit immediately filed a request for a dimensional variance with the Lincoln Zoning Board of Review (Board), seeking relief from the front yard setback so as to accommodate his garage. He claims that the zoning map which reflects two different zoning districts in his immediate neighborhood led to confusion as to the required front yard setback. At the time the stop work order issued, the garage foundation encroached on the RS-20 setback between 2.54 feet and 2.84 feet.
A public hearing on Petit's application for a dimensional variance was held before the Board on April 1, 2003. Petit testified at the hearing, claiming that the relief was necessary due to a good faith mistake on his and his surveyor's part, which led them to believe that Petit's lot had an R-12 zoning classification. The town's planning board recommended approval of the variance. One neighbor, Hoyle, testified in opposition to the application, arguing that Petit did not comply with the setback requirement and Petit was not presented with a hardship other than one which Petit himself created.[1]
The Board found that the relief requested was necessary due to errors and ambiguities in the town's records relating to Petit's land. At one point a Board member stated, "It would appear it is not your fault that this happened. You rely on professionals. There's no question about it. It's confusing. This is all over the place. It's that simple." (Tr. 7.)[2]
On April 4, 2003, the Zoning Board's memorandum of decision, granting Petit's petition, was recorded and posted. The instant appeal followed.
 Standard of Review
Rhode Island General Laws § 45-24-69(d) grants limited authority to this Court when reviewing of a decision of a Zoning Board of Review. This section provides:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
The court "does not weigh the evidence; instead [it] review[s] the record to determine whether substantial evidence existed to support . . . [the] decision." OK Properties v. Zoning Board of Review of Warwick,601 A.2d 953, 955 (R.I. 1992). See also Lischio v. Zoning Board of Reviewof the Town of North Kingstown, 818 A.2d 685, 690 (R.I. 2003). The court must review the "whole record" to determine whether "substantial evidence" exists in support of the zoning board's findings. Caswell v.George Sherman Sand Gravel Co., 424 A.2d 646 (R.I. 1981). Substantial evidence is defined as "more than a scintilla, but less than a preponderance." Apostolou v. Genovesi, 288 A.2d 821 (1978).
 Discussion
Rhode Island General Laws § 45-24-41(c) sets forth the standard which governs the zoning board of review's granting a variance. The statute requires that "evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief granted is the least relief necessary."
In addition to these four statutory requirements, the owner must be able to satisfy the resurrected Viti Standard in accordance with recently amended § 45-24-41(d)(2). Pursuant to that standard, it must be shown that "in granting a dimensional variance . . . the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience." Viti v. Zoning Boardof Review of Providence, 92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960).
To the same effect is the recently revised statute, § 45-24-41
(d), which provides in pertinent part:
 The zoning board of review shall, in addition to the above standards [set forth in subsection (c)], require that evidence is entered into the record of the proceedings showing that: * * * (2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief . . .
The legislature's return to the Viti doctrine as explained in Lischiov. Zoning Board of Review of the Town of North Kingstown, 818 A.2d 685
(R.I. 2003) applies to the case at bar.
 [Section] 45-24-41 (d)(2) requires the applicant to demonstrate only that the hardship [the applicant would suffer] if the dimensional variance is not granted amounts to more than a mere inconvenience. The new language in the 2002 amendment reinstates the judicially created Viti Doctrine, Viti v. Zoning Board of Review of Providence, 92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960), which held that for an applicant to obtain a dimensional variance (also known as a deviation), the landowner needed to show only an adverse impact that amounted to more than a mere inconvenience. (citations omitted During the Viti era, landowners who wanted to establish a right to dimensional relief were not required to demonstrate a loss of all beneficial use of the parcel in the absence of a deviation nor was the zoning board required to find that the dimensional relief served the public's welfare or convenience. Viti 92 R.I. at 64-65, 166 A.2d at 213.
The Viti Doctrine was superseded by the 1991 amendment (P.L. 1991, Ch. 307, § 1) to chapter 24 of title 45,
see von Bernuth, 770 A.2d at 400, but recently has been given new life by the General Assembly.
 * * *
 We recognize that the revised language in the 2002 amendment lessens the burden of proof necessary to obtain dimensional relief and an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience. (footnotes omitted) Id. At 691-92.
Hoyle argues that Petit failed to comply with every requirement that must be met when seeking a dimensional variance. The first requirement addresses whether the hardship is due to the unique characteristics of the subject land or structure. Hoyle argues that the only relevant evidence on this point is his "testimony" and the site diagrams which he claims show that the lot in question is zoned RS-20.
However, the record reflects that Petit's hardship was not initiated by any wrongdoing on his part; rather, it is the product of the confusing and/or conflicting records of the building inspector and the town zoning map which was incorporated into Petit's surveyor's site plan for the lot at issue. Accordingly, the Board's finding that Petit's hardship was due to the unique characteristics of his land is not clearly erroneous.
The second requirement that must be met is that the hardship may not be the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain. Hoyle claims that the hardship is clearly the product of Petit's prior action. Hoyle argues that Petit failed to check with the building inspector's office before he poured the foundation for the garage. Thus, his prior action, the pouring of the foundation, was the actual cause of the hardship. At the hearing Hoyle argued to the Board: "They poured the foundation. . . . [i]f they had it, in fact, inspected by the building inspector, he may have made the determination before it encroached upon the setback line. Since that was circumvented and it wasn't inspected, it was a prior act, and it was done by the applicant." (Tr. 11.)
The Board, however, found that the documentation concerning zoning of the lot and its immediate environs was the proximate cause of the confusion, not Petit's desire to realize greater financial gain. As one board member observed, "[t]he hardship is not the result of any prior action of the applicant. I don't believe that he put it on himself, I believe it was the surveyor and the labeling of the zoning of the lot." (Tr. 21.) Petit originally had planned to construct a twenty-six foot deep garage. (Tr. 3.) The purpose of the garage was for storage of equipment and trucks. (Tr. 4.) Petit realized that the twenty-six foot garage would not be large enough for the doors to be comfortably opened on both vehicles. He therefore decided to enlarge the width of the garage by four feet. Because of the confusion as to zoning, Petit was advised by his licensed surveyor that he could add on the extra width and still be in compliance with the (RS-12) zoning setback. A member of the Board acknowledged this problem when he stated, "then he talks to a surveyor and says, can I move the house back so I can build a larger garage? And the surveyor says you don't have to. You can add five feet (sic) and still be within your setback." (Tr. 15.) Another Board member noted:
 "If you want to take the issue of a self-imposed hardship, there's no doubt that a mistake was made here. What the legal ramifications of that standard are, there's got to be some positive, knowing act. This clearly to me does not seem to fit into the legal definition that he created his own hardship. He did not." (Tr. at 19.)
An additional Board member observed, "Who would deliberately do that [exceed the setback line by pouring a foundation] knowing that's the punishment [removing the foundation] so to speak?" (Tr. 20.) Accordingly, the Board's finding that Petit did not cause the hardship or create it in order to realize greater financial gain is supported by competent record evidence.
Hoyle next argues that the Board failed to properly consider the third statutory requirement, that the granting of the variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based. Hoyle testified at the hearing that the houses on Anna Sayles Road, Simon Sayles Road and to the end of Great Road "are well in excess of a century old. All of the houses that were built since then, a majority of them sit back no less than forty, fifty, even sixty feet. Most of those lots have big front yards." (Tr. 11.)
However, with respect to the general character of the surrounding area, the Board found that the granting of the variance would not alter the general character on Great Road. The Chair of the Board stated that, "[i]n the Lime Rock Village, the houses are pretty close. I understand. What we're talking about here is two feet ten inches. We're not asking for twenty feet or twenty-five feet. It's screened." (Tr. 19.) Furthermore, the Board added a deed restriction wherein no increase in building height would be allowed. Petit is also required to install two windows on the front wall of the garage to make it more esthetically pleasing to abutters. (Tr. 8.) And, Petit also noted that existing evergreens shield a view of the garage from the street. (Tr. 4.)
The Board found that granting the variance would not alter the general character of the surrounding land on Great Road and further implemented deed restrictions to make the garage aesthetically pleasing to abutters. Accordingly, that finding and the determination that the granting of the variance would not adversely impair the zoning ordinance or the town's comprehensive plan is supported by the record.
Regarding the fourth requirement, Hoyle argues that Petit has not requested the least relief necessary. Hoyle claims that Petit merely prefers an oversized garage because of his individual needs. Hoyle opined that "in most single-family dwellings, a two-stall garage typically doesn't exceed twenty-four feet by twenty-four feet. That is ample room for a singlefamily dwelling attached to a two-stall garage." (Tr. 12.) However, one of the Board members stated that "[t]he relief requested was the least relief necessary." (Tr. 21-22.) The Board took notice of the fact that Petit asked for only a variance of two feet ten inches rather than an excessive one. Moreover, the Board noted that the variance request would not be an issue, but for the confusion caused by town records and site maps prepared by the surveyor.
Finally, the Board found that Petit acted in an appropriate manner throughout the process. He acted in good faith. Upon the issuance of the town's stop work order, he immediately stopped construction and applied to the Board for minimum relief. The Superior Court will not consider the credibility of witnesses, weigh evidence, or make its own finding of fact. See Monroe v. Town of East Greenwich, 733 A.2d 703 (R.I. 1999). The Board's finding that the applicant requested the least relief necessary is not clearly erroneous.
Finally, Appellant argues that Petit has failed to comply with theViti standard — that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. Hoyle testified that "[i]t is our contention that it is a mere inconvenience. It's got to be made smaller. In a new construction I find it hard to believe that anybody can say, sorry. We made a mistake." (Tr. 12.)
With respect to Petit's burden in this regard, the Board found: "The dimensional variance is a hardship and is more than a mere inconvenience because if he was asked to move (and remove) the foundation, the expense and the changing of the looks of his house would be changed tremendously." (Tr. 22.) As previously noted, when reviewing a zoning board's decision, the Superior Court does not consider the credibility of witnesses, weigh evidence, or make its own finding of fact. Monroe v.Town of East Greenwich. The Board disagreed with Hoyle's assessment of the evidence. The Board found that there was a significant and wellfounded, honest mistake regarding the actual setback requirements. The record reflects that in light of the confusion over zoning classifications, removal of the foundation would constitute an excessive hardship that Petit would have to suffer.
 Conclusion
The Superior Court's review of the Board's decision is confined to a search of the record to determine whether such decision rests upon competent evidence or is affected by error of law.
After review of the entire record, the Court finds that the decision of the Board to grant Petit's application for a dimensional variance is supported by the reliable, probative, and substantial record evidence. Furthermore, the Board's decision is not in excess of its statutory authority or in violation of the provisions of any statute or ordinance. Nor have substantial rights of the appellant been prejudiced. Accordingly, the Board's decision must be, and is, affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] No other abutter has made objection to Petit's application.
[2] "Tr." refers to the transcript of the April 1, 2003 hearing of the Board.